DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant Jeffrey Ambrosio has appealed from the judgment of the Lorain County Court of Common Pleas that convicted him of one count of sale of unregistered securities, in violation of R.C. 1707.44(C)(1), and one count of theft, in violation of R.C. 2913.02 (A)(3). This Court affirms.
 I {¶ 2} On June 18, 2002, Appellant was indicted on one count of selling unregistered securities, in violation of R.C.1707.44(C)(1), and on one count of theft of $100,000 or more from an elderly person, in violation of R.C. 2913.02(A)(3). On May 7, 2003, a jury trial commenced in the Lorain County Court of Common Pleas and on May 14, 2003, Appellant was found guilty of both charges in the indictment.[1] On October 3, 2003, Appellant was sentenced to five years incarceration for the sale of unregistered securities conviction and three years incarceration for the theft conviction. The sentences were to be served concurrently.
 {¶ 3} Appellant has timely appealed the convictions, asserting three assignments of error.
 II Assignment of Error Number One
"[Appellant] was denied the effective assistant of counsel at critical stages of litigation, including, but not limited to counsel's failure to represent [appellant] I [sic]"
 {¶ 4} In his first assignment of error, Appellant has argued that he was denied the effective assistance of counsel because his trial counsel was deficient and that deficiency resulted in prejudice to Appellant. Specifically, Appellant has asserted that his trial counsel failed to call the proper witnesses and that he was denied the opportunity to testify on his own behalf. We disagree.
 {¶ 5} Appellant bears the burden of proof in a claim of ineffective assistance of counsel. State v. Colon, 9th Dist. No. 20949, 2002-Ohio-3985, at ¶ 49. Appellant must overcome the strong presumption that counsel's performance was adequate and that counsel's action might be sound trial strategy. State v.Smith (1985), 17 Ohio St.3d 98, 100. Furthermore, an attorney properly licensed in Ohio is presumed competent. State v. Lott
(1990), 51 Ohio St.3d 160, 174, certiorari denied (1990),498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed2d 596.
 {¶ 6} In order to overcome his burden and establish an ineffective assistance of counsel claim, Appellant must satisfy a two-prong test. First, Appellant must demonstrate that trial counsel's performance was deficient. Strickland v. Washington
(1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L. Ed.2d 674. To establish a deficiency Appellant must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed Appellant by the Sixth Amendment. Id. Appellant must identify the acts or omissions of his attorney that he claims were not the result of reasonable professional judgment. State v. Palmison, 9th Dist. No. 20854, 2002-Ohio-2900, at ¶ 31. This Court must consider the facts of this particular case as they existed at the time of trial counsel's conduct and then we must decide whether counsel's conduct fell outside the range of that which is considered professionally competent. Id.
 {¶ 7} To prove his claim of ineffective assistance of counsel Appellant must also demonstrate that he was prejudiced by his trial counsel's deficient performance. Id. at ¶ 30. Prejudice entails "a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus, certiorari denied (1990), 497 U.S. 1011,110 S.Ct. 3258, 111 L.Ed.2d 768. This requires a showing that counsel's errors were so serious as to deprive Appellant of a fair trial.Strickland, 466 U.S. at 686-687.
 {¶ 8} "[A]n appellate court may analyze the [prejudice] prong of the Strickland test alone if such analysis will dispose of a claim of ineffective assistance of counsel on the ground that the defendant did not suffer sufficient prejudice." State v.Lansberry, 9th Dist. No. 21006, 2002-Ohio-4401, at ¶ 16, citingState v. Loza (1994), 71 Ohio St.3d 61, 83. Accordingly, this Court will first determine whether Appellant suffered prejudice as a result of his counsel's alleged deficiencies.
 {¶ 9} Appellant has first argued that his trial counsel was ineffective because he failed to call Appellant's business lawyer, Mr. Weissinger, as a witness. Appellant has asserted that part of Mr. Weissinger's duties as legal counsel for Ohana Venture ("Ohana"), a venture capitalist company, was to register securities. Appellant has claimed that had testimony "been elicited from Mr. Weissinger there is a likelihood that jury nullification would have occurred." Appellant also found fault in the fact that Mr. Laurie, one of Appellant's business partners, was not called to testify.
 {¶ 10} "`Decisions regarding the calling of witnesses are within the purview of defense counsel's trial tactics[,]' and absent a showing of prejudice, the failure to call witnesses will not be deemed erroneous." Elyria v. Bozman. 9th Dist. No. 01CA007899, 2002-Ohio-2644, at ¶ 21, certiorari denied (2003),539 U.S. 931, 123 S.Ct. 2583, 156 L.Ed.2d 611, quoting State v.Coulter (1992), 75 Ohio App.3d 219, 230.
 {¶ 11} Appellant has failed to establish that his trial counsel's failure to call Mr. Weissinger and/or Mr. Laurie resulted in prejudice to Appellant. In regards to Mr. Weissinger, Appellant failed to address whether he would have waived attorney-client privilege to allow Mr. Weissinger to testify and whether his business partners would have also waived privilege. Also, it is not clear that if called, Mr. Weissinger would have even testified; Mr. Weissinger could have invoked the Fifth Amendment or refused to disclose client confidences and, therefore, provided no assistance. Further, Appellant failed to provide any arguments as to the content of Mr. Weissinger's potential testimony that would have changed the outcome of the case. Instead, Appellant has skipped to what he has claimed the change would have been without giving a reason for the change in outcome.
 {¶ 12} With regards to Mr. Laurie, testimony revealed that Appellant has more than one company, but Appellant has not even stated in which company Mr. Laurie is his partner. Further, Appellant failed to provide any evidence or argument concerning what Mr. Laurie would have said on the stand that would have changed the outcome of the trial.
 {¶ 13} Appellant next argues that his trial counsel was ineffective because his trial counsel denied him the opportunity to testify on his own behalf. A review of the trial transcript reveals that after Appellant made his Crim.R. 29 motion, Appellant's trial counsel addressed the court, the following colloquy took place:
"[Defense Counsel]: Judge, I've explained to [Appellant] that even though he is not required to testify in this type of matter, that he has a right to testify and that I can only give him advice as to what I think he should or should not do, but the ultimate decision rests with him, so I will tell Court that I have advised him that it was my intention to rest, not offer [Appellant] as a witness, and, as a result of not offering him as a witness, I can't offer character witnesses because his character technically is not put into issue in this case, so I wanted the Court to make sure that this is what [Appellant] wants to do and that he's making that decision based upon my advice, but it is his decision and his alone.
"[Trial Court]: Sure. Well, * * * you are correct. First of all, character does not become an issue unless [Appellant] places it in issue, and the only way he can do that is by offering testimony and then the defense is permitted to bring in character witnesses; however, obviously, that is a double-edged sword because once the defense does that, the State of Ohio, in rebuttal, is permitted to bring in rebuttal evidence which may negate or counteract the issue of character.
But, in any case, [Appellant, your attorney] has indicated that he's advised you of your right to testify; is that correct?
"[Appellant]: That's correct.
"[Trial Court]: And that you've considered his advice and that ultimately you are choosing not to testify in this matter; is that correct, also?
"[Appellant]: Yes."
 {¶ 14} It is clear from the trial transcript that Appellant was not denied the opportunity to testify. But, even if the transcript failed to show that Appellant waived his right to testify on the record, this Court has written that, "[i]t is difficult to imagine a better example of trial strategy than a decision of whether a defendant should testify on his own behalf. This Court is not in a possession to second guess defendant's trial counsel's advice on that decision." State v. Mabry (Oct. 9, 1996), 9th Dist. No. 2514-M, at 7.
 {¶ 15} Based on the foregoing, this Court finds that Appellant has not demonstrated that his counsel's advice that Appellant not testify and counsel's decision not to call Appellant's business lawyer or business partner as witnesses were anything other than sound trial strategies. We further find that Appellant has not demonstrated that the outcome of the trial would have been different had Appellant testified or the witnesses been called. Appellant's first assignment of error is without merit.
 Assignment of Error Number Two
"The trial court improperly sentenced [appellant] to a term of incarceration far exceeding the shortest prison term available, depsite [appellant] having never previously served a prison term"
 {¶ 16} In his second assignment of error Appellant has argued that the trial court imposed an improper sentence. Specifically, Appellant has contended that the trial court's prison term is improper because it far exceeded the shortest prison term available and that when one considers Appellant's lack of a felony record and no history of incarceration, the trial court should have imposed the shortest prison term. We disagree.
 {¶ 17} When reviewing a sentence on appeal, an appellate court "may increase, reduce, or otherwise modify a sentence" or it may vacate the sentence and remand the matter for resentencing. R.C. 2953.08(G)(2). Pursuant to R.C. 2953.08(G)(2):
"The appellate court's standard of review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
"(a) That the record does not support the sentencing court's findings under division (B) or (D) of [R.C. 2929.13] * * *;
"(b) That the sentence is otherwise contrary to law." R.C2953.08(G)(2).
Clear and convincing evidence is:
`"[T]hat measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal."' State v.Eppinger (2001), 91 Ohio St.3d 158, 164, quoting Cross v.Ledford (1954), 161 Ohio St. 469.
 {¶ 18} Appellant has asserted that the trial court erred in failing to impose the shortest prison terms authorized for the offenses of which he was found guilty. As previously noted, Appellant was found guilty of the sale of unregistered securities, a felony of the first degree, and theft, a felony of the third degree. Appellant has argued that the trial court should have imposed the minimum authorized prison sentence.
Pursuant to R.C. 2929.14(A):
"[I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender * * * and is not prohibited * * * from imposing a prison term on the offender, the court shall impose a definite prison term that shall be one of the following:
"(1) For a felony of the first degree, the prison term shall be three, four, five, six, seven, eight, nine, or ten years.
"* * *
"(3) For a felony of the third degree, the prison term shall be one, two, three, four, or five years."
R.C. 2929.14(B) requires that:
"[I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense * * * unless one or more of the following applies:
"* * *
"(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 19} In the case sub judice, the trial court declined to impose the shortest prison terms authorized by R.C. 2929.14(A). Appellant was sentenced to a five year prison term for his first degree felony, which is two years beyond the minimum, and three years for his third degree felony, which is two years beyond the minimum. R.C. 2929.14(A). In its sentencing entry, the trial court stated: "The shortest prison term will demean the seriousness of the [Appellant's] conduct." In the "[r]ecidivism likely" portion of the journal entry, the trial court indicated that Appellant showed no genuine remorse for his actions and that he had a prior DUI conviction. When deciding whether Appellant's conduct was more serious than conduct normally constituting his offenses, the trial court noted that the victim of the offense suffered serious economic harm; that Appellant's business relationship with the victim facilitated the offense; and that the victim was over 70 years old. In addition, the transcript of Appellant's sentencing hearing reflects that the trial court made the following statement on the record at the hearing:
"Well, the Court does recognize that there are many factors it must consider. By State law, the Court must start with a determination as to whether, in fact, a prison sentence is appropriate. If the Court should make a finding that a prison sentence is appropriate, then it must, by law, start with the presumption that the minimum sentence is appropriate, and then, should the Court find certain factors be true, the Court can deviate from that, that minimum sentence. * * * With respect to some of these factors, I would indicate that the [Appellant] does not appear to show genuine remorse in this Court's opinion. * * * He has not been adjudicated delinquent. There does appear to be a DUI conviction. With respect to seriousness factors, the victim did suffer serious economic harm. The [Appellant's] business relationship with the victim helped facilitate the offense, and the Court considers the fact that the victim was over 70 years of age a seriousness factor worthy of consideration. Balancing all of that, the Court does not find that the minimum term of incarceration is appropriate because the Court finds that the shortest prison term would demean the seriousness of the [Appellant's] conduct, however, the Court does not find that the facts and circumstances support the State's request for consecutive sentences."
 {¶ 20} Based on the foregoing, it is clear that the trial court made the requisite findings for imposition of prison terms that exceed the minimums both in its sentencing journal entry and on the record at Appellant's sentencing hearing.
"R.C. 2929.14(B) does not require that the trial court give its reasons for its finding that the seriousness of the offender's conduct will be demeaned or that the public will not be adequately protected from future crimes before it can lawfully impose more than the minimum authorized sentence." (Emphasis sic.) State v. Edmonson (1999), 86 Ohio St.3d 324, syllabus.
 {¶ 21} Having complied with the statutory requirements of R.C. 2929.14(B), this Court finds that Appellant has failed to demonstrate by clear and convincing evidence that the trial court acted contrary to law in imposing sentences that included more than the minimum prison terms. Accordingly, Appellant's second assignment of error lacks merit.
 Assignment of Error Number Three
"The trial court's verdict is not supported by the manifest weight of the evidence"
 {¶ 22} In his third assignment of error Appellant has argued that the jury's verdict is against the manifest weight of the evidence. Specifically, Appellant has asserted that the securities in question were exempt, making registration unnecessary and therefore, he broke no laws.[2] We disagree.
 {¶ 23} In reviewing whether a conviction is against the manifest weight of the evidence, this Court must:
"[R]eview the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339,340.
 {¶ 24} Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. State v. Thompkins (1997),78 Ohio St.3d 380, 387. Further, when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror," and disagrees with the factfinder's resolution of the conflicting testimony. Id.
 {¶ 25} In the instant appeal, Appellant was convicted of sale of unregistered securities, a violation of R.C. 1707.44(C)(1). That section provides, in pertinent part:
"(C) No person shall knowingly and intentionally sell, cause to be sold, offer for sale, or cause to be offered for sale, any security which comes under any of the following descriptions:
"(1) Is not exempt under [R.C. 1707.02], nor the subject matter of one of the transactions exempted in [R.C. 1707.03, 1707.04, or1707.34], has not been registered by coordination or qualification, and is not the subject matter of a transaction that has been registered by description[.]"
 {¶ 26} During the trial, the State presented testimony from Virginia Milton ("Milton"), the victim, Officer Harold White ("Officer White") of the Amherst Police Department, Investigator Jim Lynsky ("Lynsky") of the Lorain County Prosecutor's Office, and Mary Schultz ("Schultz"). The State also played a videotape of Appellant talking with the Amherst Police Department, and admitted the videotape and several documents and reports as exhibits.
 {¶ 27} The videotape admitted by the State was recorded on November 26, 2001 by the City of Amherst Police Department. Appellant was told that he was called in to discuss an investment involving Milton. Appellant recognized the name immediately and gave a brief history of his dealings with her. He explained that he met with her in 1999 and went over her options for investing $118,000 that had been in a fixed annuity. Appellant stated that she told him what she wanted to do and that her investment was currently in Ohana, one of Appellant's venture capitalist companies.
 {¶ 28} Appellant stated that he spoke with Milton a month ago and that he had seen her two to three times since June. He told the officers that Milton knew where her money was located. He said that he was supposed to meet with Milton's nephew from California, but that Appellant could not make the appointment. Appellant stated that he told Milton he needed her permission to speak with her nephew about her investments. Appellant told the officers that Milton asked him if he thought her nephew was after her money.
 {¶ 29} In the videotape Appellant tells the officers that in the last eight or nine months Milton has been deteriorating and that she becomes easily confused. He said that Milton became upset with him whenever she called and he did not have time to visit her.
 {¶ 30} Appellant stated that he informed Milton that he could get her out of her investment and he told the officers that he could get her out of Ohana by selling her shares. He informed the officers that he could sell her shares and give her the money from the sale within thirty to ninety days.
 {¶ 31} Appellant stated that he put Milton's $118,000 in a trust account, not a personal account. He said he would bring them bank records. Appellant told the officers that he could provide evidence that he sent her the proper applications. He claimed he had been notifying her all along about the investment. Appellant stated that he first spent time explaining the investment to Milton, but that she just did not understand venture capital companies.
 {¶ 32} When asked why he took so long to respond to police requests to meet, Appellant stated that he does not check emails and he does not always receive his messages. Appellant also stated that a lawyer will take any case and that people take advantage of the market and the bad economy.
 {¶ 33} During the trial, Milton testified that she was too excited to remember if she met with Appellant in 1991, but that she did she meet with Appellant in her home in 1999. Milton testified that she received an annuity check for $118,263.63 made payable to her dated June 6, 1999. (Exhibit 1). She testified that while she endorsed the check she did not write "PAY TO THE ORDER OF AMBROSIO ASSET MANAGEMENT" or "FOR DEPOSIT ONLY Acct# 38120054." (Exhibit 2). Milton testified that she signed an Ohana account application, but that she did not sign page 2, the accreditation section, even though the accreditation section did contain her initials. She also testified that she did not sign page 3, the signature and customer agreement page. (Exhibit 72). Later, on cross examination, Milton testified that it was her signature on the document, but that she never received a copy of the application.
 {¶ 34} On direct examination, Milton was shown a certificate for Ohana stating that she owned "ten (24) (sic)" fully paid units of Ohana dated Monday July 3, 1999.[3] (Exhibit 3). After reviewing the certificate, Milton testified she had never seen the certificate before. Milton was next shown a Limited Partnership Agreement for Ohana, which she also testified she had never seen. (Exhibit 4). She admitted that in order to recall events she needed to see things in writing.
 {¶ 35} Milton testified that she never wanted to get into high risk investments, especially with her life savings. She testified that Appellant never sent her any information after their June 22, 1999 meeting and that they never met after that date. Milton testified that she does not know what happened to her $118,000 and that she was disappointed in Appellant because he was not responding to her questions about her investments.
 {¶ 36} Officer White testified next for the State. Officer White testified that on October 8, 2001, he was dispatched to Milton's house on a theft complaint. He testified that Milton stated that she believed some money was stolen by her financial advisor, Appellant. Officer White testified that he called Appellant four times and made several attempts to locate him between October 8, 2001 and November 26, 2001, and that on November 26, 2001 Appellant came to the station and an audio/videotaped interview was conducted.
 {¶ 37} Lynsky, the investigator for the Lorain County Prosecutor's Office, testified that Appellant gave him the copy of Milton's check from the annuity (Exhibits 1 and 2), the Ohana certificate (Exhibit 3), the Ohana Limited Partnership Agreement (Exhibit 4), and the account application booklet (Exhibit 72). Lynsky testified that Appellant did not produce to him the other documents he stated he would.
 {¶ 38} Schultz testified for the State. Schultz, a certified fraud examiner, testified that the Lorain County Prosecutors asked her to investigate Appellant and her testimony focused on Appellant's investment and banking practices. She testified that Appellant's bank account for "Jeffrey M. Ambrosio dba Ambrosio Asset Management" had a balance of $35.98 on June 18, 1999, up from a negative balance of $564.02 on June 16, 1999. Schultz testified that the account showed bank card transactions to furniture stores and an automatic monthly deduction to a home mortgage company.
 {¶ 39} Schultz testified that she also reviewed Appellant's bank account at another bank titled "[Ohana]." That account was opened in 1998 and included withdrawals and deposits from the original Ohana investors.
 {¶ 40} Schultz testified that Milton's $118,263.63 was deposited in Appellant's Ambrosio Asset Management account ("AAM account"), not the Ohana account. Schultz testified that the following transactions occurred in the AAM account after Milton's annuity check was deposited: numerous cash withdrawals totaling $5,223; loan repayments; automatic monthly withdrawals for mortgage payment; investor payments; money wires; checks written for household expenditures; retail purchases; credit card payments; car lease payments; payments to an attorney; and other identified checks. Schultz testified the only signatures on the checks were those of Appellant and his wife. Schultz testified that on July 28, 1999, the balance of the AAM account was $22.42.
 {¶ 41} Schultz testified that she found no evidence that Appellant transferred $120,000 from any account to purchase twenty-four shares of Ohana. Further, Schultz testified that she found no evidence of transfers from Appellant to Ohana to give him twenty-four shares.
 {¶ 42} Schultz testified that because of the "dba" label, the deposit of Milton's check, and the combination of business and personal expenditures, it was difficult to determine if AAM was a personal or business account. She testified that the account had a "34" tax for business identification and a social security number, which she had never seen on an account.
 {¶ 43} Schultz testified that if the AAM account was a business account, then it was improperly used because: 1) Appellant's wife is a signatory on the account, yet she is not on any other business account; and 2) numerous personal expenditures are paid through the account, such as groceries, dry cleaning, entertainment, and a home mortgage. Schultz testified that money from investors should not go into a personal account, and that it is never wise to mix business and personal expenditures in one account. Schultz testified that using investor's money to pay loans never constitutes an investment, and that it was not acceptable business or accounting practice to use funds in one account to pay a back an investment on a different account.
 {¶ 44} Schultz testified that the Ohana Limited Partnership Agreement was a sophisticated document and that the description of an accredited investor does not match Milton's status. She testified that although the accredited investor box is marked on the Ohana Account Application Booklet, Milton is not an accredited investor. Further, Schultz testified that the Ohana Limited Partnership Agreement contains no signatures and is not stamped by a notary.
 {¶ 45} Schultz testified that the shares listed on the Ohana certificate are not registered and that she found no evidence of the purchase of shares from any other Ohana investors during the time period when Appellant deposited Milton's annuity check.
 {¶ 46} After the State admitted several exhibits and rested its case, Appellant made a Crim.R. 29 motion. The trial court denied the motion and Appellant called his first witness.
 {¶ 47} David Rodriguez ("Rodriguez"), a Certified Public Accountant, testified for Appellant. Rodriguez explained the requirement that a security be registered and the nature of exempt securities. He testified that the Ohana Limited Partnership Agreement states that the Ohana shares are exempt; that one must file for exemption for such securities; and that no such filings were done for Milton's shares. Rodriguez further testified that Appellant's actions constituted a "technical violation" because Appellant did not file for the exemption. Rodriguez went on to testify that normally Appellant's attorney filed the exemption and that all of the other investor's shares had exemptions filed, but no exemption was filed for Milton's shares. Rodriguez testified that Appellant knew how to file exemptions, and that Appellant's failure to file a "Form 3-Q" was a technical violation of the law.
 {¶ 48} Rodriguez testified that when dealing with potential venture capitalist investors, one should "find out about net worth, find out about * * * investment objectives * * *." He reviewed the Ohana Account Application and stated that "this document doesn't include all the documents that should have been presented to [Milton]." After reviewing all of the relevant exhibits Rodriguez testified that a sale did occur and that Appellant sold, on a secondary sale, his personal shares of Ohana to Milton. On cross-examination, as to whether or not Appellant had invested any of his own money into Ohana and if said investment could be traced, Rodriguez stated: "I believe what I saw was a wire transfer and a certificate like — like Exhibit 3." The State then asked: "[I]sn't it true that wire transfer didn't go into Ohana Ventures, did it?" Rodriguez replied: "I don't know if that's true or not."
 {¶ 49} Rodriguez testified that it is not a good business practice to commingle business and personal money. He stated that it would not have been unusual for Appellant to sell Milton his Ohana shares and deposit that money into his account. Rodriguez agreed with Schultz that other Ohana investors were paid out of the AAM account.
 {¶ 50} After Rodriguez's testimony, Appellant rested his case and renewed his Crim.R. 29 motion. The trial court denied the motion. Upon Appellant's renewed motion concerning the jury instruction on whether or not the security was exempt, the trial court found that the statute and case law supported its prior conclusion that "the burden of showing an exemption falls upon [Appellant] in this case."[4]
 {¶ 51} After careful review of the entire record, weighing the evidence and all reasonable inferences and considering the credibility of witnesses, this Court cannot conclude that the jury clearly lost its way when it found Appellant guilty of sale of unregistered securities. The jury was in the best position to adjudge the credibility of witnesses and give proper weight to their testimony.
 {¶ 52} Based on the foregoing, this Court cannot find that Appellant's conviction was against the manifest weight of the evidence. Accordingly, Appellant's third assignment of error lacks merit.
 III {¶ 53} Appellant's three assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, J., Batchelder, J. Concur.
[1] The theft charge was charged as a second degree felony. By a journal entry dated May 14, 2003, the trial court granted Appellant the right to dispute the degree of felony on the theft charge. At his sentencing the charge was amended to a third degree felony because the offense occurred before the enhanced elderly specification penalty took effect.
[2] Appellant does not argue in his appellate brief that his theft conviction was against the manifest weight of the evidence. Accordingly, this Court will only address the manifest weight of Appellant's sale of unregistered securities' conviction.
[3] The Court notes that July 3, 1999 was a Saturday, not a Monday.
[4] Appellant has not appealed the trial court's decision on this issue. Accordingly, this Court will not address the trial court's instruction.