[Cite as *State v. Dovala*, 2011-Ohio-3110.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| STATE OF OHIO | C.A. No. 10CA009896 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| MELISSA DOVALA | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 04CR065398 |

DECISION AND JOURNAL ENTRY

Dated: June 27, 2011

WHITMORE, Presiding Judge.

{¶1} Defendant-Appellant, Melissa Dovala, appeals from the judgment of the Lorain County Court of Common Pleas, denying her petition for post-conviction relief. This Court affirms.

I

{¶2} In July 2005, a jury found Dovala guilty of felony murder, felonious assault, endangering children, and involuntary manslaughter following the death of five-month-old Riley Smath, an infant who died while under her supervision at her in-home child care business. The trial court merged Dovala's manslaughter conviction with her felony murder conviction and sentenced her to an indefinite prison term of fifteen years to life. Dovala appealed and argued, in part, that her trial counsel and her original appellate counsel were ineffective. This Court affirmed her convictions and in doing so, concluded that she was not denied the effective assistance of trial counsel. *State v. Dovala*, 9th Dist. No. 05CA008767, 2007-Ohio-4914, at ¶14-

17. Thereafter, Dovala petitioned for post-conviction relief on six different grounds. The trial court determined that all of her claims were barred by res judicata and dismissed her petition. Dovala appealed, and this Court reversed the trial court's decision in part, concluding that, though three of her six grounds for relief were barred on the basis of res judicata, three were not. *State v. Dovala*, 9th Dist. No. 08CA009455, 2009-Ohio-1420, at ¶7-21. Accordingly, we concluded that the trial court had erred by failing to consider three of her claims, namely, whether her trial counsel were ineffective because they had failed to: (1) fully prepare for trial and investigate the State's case; (2) present any expert testimony to contradict the State's expert; and (3) fully investigate their theory of her defense and support it with expert evidence. Id. at ¶21. Following our remand on these matters, the trial court held a hearing on April 30, 2010. Three witnesses testified on Dovala's behalf, and the trial court admitted transcripts of deposition testimony from Dovala and her lead trial counsel, James Burge, into evidence. On August 23, 2010, the trial court issued its findings of fact and conclusions of law in which it determined that Dovala was not entitled to post-conviction relief. Dovala has appealed from the denial of her petition and asserts one assignment of error for our review.

II

Assignment of Error

"THE JUDGMENT OF THE TRIAL COURT IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE, AND CONSTITUTES AN ABUSE OF JUDICIAL DISCRETION[.]"

{¶3} In her sole assignment of error, Dovala argues that the trial court erred in denying her petition for post-conviction relief. Her argument is threefold. First, she argues that the trial court's findings of fact are not supported by the evidence in the record and, therefore, it abused its discretion in determining whether she was denied the effective assistance of counsel. Next,

she asserts that the trial court applied the incorrect legal standard when it determined whether her counsel's performance was deficient. Finally, she alleges that her counsel breached his duty to adequately investigate and prepare her defense.

{¶4} This Court reviews a trial court's decision to deny a petition for post-conviction relief for an abuse of discretion. *State v. Cleveland*, 9th Dist. No. 08CA009406, 2009-Ohio-397, at ¶11, citing *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, at ¶58. "[A] reviewing court should not overrule the trial court's finding on a petition for post[-]conviction relief [if it] is supported by competent and credible evidence." *Gondor* at ¶58. An abuse of discretion means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

{¶5} R.C. 2953.21(A)(1)(a) permits a person who has been convicted of a criminal offense to petition the court for post-conviction relief where "there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States[.]" If the trial court agrees, it may "vacate or set aside the judgment or sentence or [] grant other appropriate relief." R.C. 2953.21(A)(1)(a). In order to demonstrate ineffective assistance of counsel in a post-conviction petition, the petitioner is required to satisfy the two-prong test set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 687; *State v. Stafford*, 9th Dist. No. 24674, 2009-Ohio-5167, at ¶7. That is, the petitioner must first demonstrate that her counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Second, the petitioner must demonstrate that "the deficient performance prejudiced [her] defense." Id. To demonstrate prejudice, a petitioner must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of

the trial would have been different." *State v. Bradley* (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. If she fails to satisfy either the deficiency or prejudice prong, the petitioner is not entitled to relief. Id. at 143, quoting *Strickland*, 466 U.S. at 697.

**Standard of Review**

{¶6} On appeal, Dovala argues that the trial court applied the incorrect test for determining her claim of ineffective assistance. She asserts that the trial court erred by relying on *State v. Rouse* (July 12, 1990), 8th Dist. No. 57222, as authority for determining ineffective assistance claims because that decision "relied upon [a] pre-*Strickland* decision of the Supreme Court of Ohio which applied a different test to determine claims of ineffective legal representation." We disagree, as it is readily apparent in reading *Rouse* that the Eighth District also cited and relied upon *Strickland* and Ohio's adoption of the *Strickland* test in *State v. Bradley* (1989), 42 Ohio St.3d 136, in conducting its analysis. Moreover, the syllabus in *Bradley* relies upon the same pre-*Strickland* law, *State v. Lytle* (1976), 48 Ohio St.2d 391, as the Eighth District did in *Rouse*. Thus, we reject Dovala's assertion that the trial court misapplied the test for ineffective assistance of counsel or imposed a higher burden of proof upon her than is required.

**Findings of Fact**

{¶7} Dovala also argues that the trial court's findings of fact were unsupported by the evidence in the record. Dovala points to three different findings that she argues are unsupported by any evidence adduced at her post-conviction hearing. First, Dovala takes issue with the trial court's finding that her counsel "consulted with a neurologist *** throughout the case, as well as an OB/GYN." She argues that the "consultation" attested to by Burge was nothing more than an informal discussion between Burge and his co-counsel's husband, Dr. Tom Watson, a

neurologist. She argues that it is misleading and inaccurate to consider Burge's discussion with Dr. Watson a "consultation" because Dr. Watson was not compensated for his services and did not provide a written report of his findings. Given the lack of a report, she asserts that it is unclear what materials he reviewed and relied on in arriving at his conclusion that Smath's death was the result of an inflicted injury that would have been accompanied by the quick onset of symptoms. She also asserts that the informal nature of the "consultation" with Dr. Watson resulted in several questions critical to her defense being left unanswered, specifically, whether the injuries to Smath could have been inflicted by a younger child at an earlier point in the day. Dovala considers this possibility one of "huge importance" because there was testimony at trial that Smath had started crying earlier in the day while Dovala was out of the room, but her four year old son remained in the room with him. Dovala further argues that the neurological consultation should have included an assessment of the inconsistencies between the severe internal tissue and skull damage and the lack of any external bruising or lacerations.

{¶8} In his deposition testimony, Burge testified that he has practiced criminal law for thirty years. Throughout that time, he has defended four infant homicides before representing Dovala, taking three of those cases to trial. Based on his experience, he understood that the trauma to the head generally occurred close in time to the infant's death. Further, at the point he was retained by Dovala, she had made several statements to the police, one of which was video recorded and admitted into evidence at trial. In those statements and in her testimony at trial, Dovala stated that it was "absolutely not" possible that one of the other children could have done anything to Smath that day, and further, that there were no accidents or other adults present in the house that could have caused his injuries. Burge explained that these statements made it very difficult to mount a defense that another party had caused the fatal injuries to Smath. He did,

however, discuss the case with Dr. Francis Bartek, a physician specializing in obstetrics and gynecology ("OB/GYN") who had testified in the past for one of Burge's clients, and Dr. Tom Watson, a neurologist, who was also the spouse of Burge's co-counsel. Though neither physician prepared a report on the case, Dr. Bartek, who was compensated $2,000 in December 2004 for his analysis, suggested there might be a congenital weakness in the skull and reviewed Smath's medical records from birth. Dr. Bartek gave Burge the name of two other physicians who could conduct genetic testing to determine if there was such a weakness in Smath's skull, one of whom was Dr. Brian Clark. Burge testified that Dr. Clark was able and willing to perform the testing on Smath's parents and that the Smaths had agreed to submit DNA samples for testing. Burge discussed this strategy with Dovala and informed her of the ramifications of the test results on her defense, particularly if the test demonstrated that there was not any congenital weakness. Burge stated he left the decision up to Dovala, and that she instructed him not to pursue the testing. We note that Dovala disputes Burge's testimony, testifying in her deposition that she left the decision up to Burge and was under the impression that the testing had been done, until she learned just weeks before her trial that it had not, in fact, been done.

{¶9}    According to Burge, Dr. Watson, who was not compensated for his assessment of the case, reviewed both the medical records and the autopsy report and concluded that Smath's trauma was the result of an "inflicted injury" and that "the onset of symptoms [from the injury] would have occurred very quickly." Dr. Watson further indicated to Burge that "whoever inflicted it knew they did it." Burge stated that he consulted with Dr. Watson approximately three months before the matter was set for trial and that Dr. Watson attended portions of the trial as well. Burge admitted that he did not pursue further questioning with Dr. Watson as to the discrepancies between the internal and external damage to Smath's skull, in part because of Dr.

Watson's assessment, but also based on Burge's own experience and research with the nature of the head injuries in these cases. For these reasons, he considered it "unrealistic" to consult with another physician in an attempt to develop an alternative cause of death. Based on the foregoing, we conclude that there was some competent, credible evidence to support the trial court's conclusion that Burge consulted with two different physicians throughout Dovala's case.

{¶10} Next, we consider Dovala's challenge to the trial court's finding that Dr. Audrius Plioplys was unable to provide "a precise opinion on the amount of compressive force needed to cause the [] fractures" to Smath's skull. Dr. Plioplys testified at the post-conviction hearing that Smath's injuries were the result of "compressive-based force," not blunt trauma, as was the opinion of the State's experts at trial. In addressing the amount of force necessary to inflict a compressive force injury, Dr. Plioplys' testimony ranged from a statement that the injury could have resulted from "some pressure" from a thumb or a knuckle being applied for a brief period of time, to a later statement that, although the force "could have been very brief[,] *** it was considerable force." Though he opined in his affidavit and at the hearing as well that the force could have been inflicted "by the normal physical strength and body weight of a child four years of age or older," he was unable to specify the amount of weight or calculation of force that was necessary to inflict the fatal fracture. His only testimony in this regard was that a finger or knuckle placed on the developing skull of a person Smath's age could have produced such an injury "with [just] enough [] weight being placed on it[.]" When explicitly asked if he could determine the amount of weight or force necessary to cause the type of fracture suffered by Smath, however, Dr. Plioplys stated he could not. He further agreed that he was not familiar with the literature or field of research on the amounts of pressure necessary to cause certain types of fractures. Based on this testimony, we conclude that there was some competent, credible

evidence adduced at the hearing to support the trial court's finding as to Dr. Plioplys' opinion on the amount of force necessary to cause Smath's injuries.

{¶11}  Finally, we consider Dovala's claim that the trial court failed to credit the breadth of testimony offered by Dovala's mother, Margaret Heinman.  Dovala argues that the trial court failed to consider Heinman's testimony about an event that occurred at Dovala's house earlier on the day of Smath's death.  Specifically, she argues that the trial court ignored Heinman's testimony relating her concerns that Dovala's son, or another child in the home, could have injured Smath while Dovala was caring for her special needs daughter in a different part of the house and Heinman was with the children.  During that time, Heinman stated that Dovala's son was playing near Smath and, shortly thereafter, Smath starting crying and continued doing so for nearly ten minutes.  Heinman testified at the post-conviction hearing that she had informed Burge of her concerns that Dovala's son might have done something to Smath while she was not watching, but stated that at trial, she was only asked whether she witnessed Dovala's son injure Smath, not whether she believed if there was an opportunity for Dovala's son (or another child) to have harmed Smath, when she was not watching.  Despite having expressed this concern to Burge, Heinman stated he failed to question her during trial on this event.

{¶12} At the post-conviction hearing, the State questioned Heinman on cross-examination as to why there was a five-second delay before she responded on direct when she was asked whether Dovala's son had the opportunity to injure Smath.  Heinman initially was silent in response to the State's question.  When the State asked a second time about the reason for her delay in answering a question she surely knew would be addressed at the hearing, she responded that she "was thinking about the question" before responding.  The State further challenged Heinman's credibility based on the fact that she was Dovala's mother, in addition to

her hesitation in answering the foregoing question. Thus, it is reasonable that the trial court omitted any finding of fact on this topic because it simply did not find Heinman's testimony to be credible. Because the trial court is in the best position to judge the credibility of a witness throughout a post-conviction hearing, this Court will not second-guess its judgment on appeal. *State v. Bradford* (Aug. 11, 1999), 9th Dist. No. 98CA007264, at *3 (affirming the trial court's decision to credit the attorney's version of events over the defendant's in a post-conviction relief hearing). Accordingly, the trial court was not required to make a finding of fact if it did not consider the testimony credible.

{¶13} Based on the foregoing analysis, we conclude that the trial court's findings of fact were based on competent, credible evidence. Dovala's assertion to the contrary lacks merit.

**Ineffective Assistance**

{¶14} Having concluded that the trial court's findings of fact were supported by competent, credible evidence, we next consider whether the trial court abused its discretion by concluding that Dovala was not denied the effective assistance of counsel during her trial. The sole basis asserted in her appellate brief is that Burge was ineffective because he failed to investigate her case and prepare an adequate defense.

{¶15} "[I]n Ohio, a properly licensed attorney is presum[ed] competent." *State v. Calhoun* (1999), 86 Ohio St.3d 279, 289. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. Accord *State v. Williams* (1991), 74 Ohio App.3d 686, 695. Additionally, "courts should decline second-guessing an attorney's trial strategy."

*Williams*, 74 Ohio App.3d at 695, citing *State v. Hester* (1976), 45 Ohio St.2d 71, 74. The Supreme Court has further noted that "the failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel." *State v. Nicholas* (1993), 66 Ohio St.3d 431, 436, citing *State v. Thompson* (1987), 33 Ohio St.3d 1, 10-11.

{¶16} Dovala essentially argues that Burge was overconfident in his ability to defend her case based on his past experience of trying similar cases and over-relied on this experience and self-professed knowledge of medical issues, instead of seeking the expert opinions of trained medical professionals. In support of this assertion, Dovala offered the testimony of defense attorney Mark Devan. Devan testified that, based on his thirty-five years of experience as a criminal defense attorney, after reviewing the record in this case, it was "apparent that an expert was necessary on behalf of [] Dovala." He opined that Burge was deficient in presenting any theory of reasonable doubt throughout his cross-examination of either of the State's medical experts, the county coroner, Dr. Paul Matus, or his supervisor, Dr. John Daniels, both of whom performed the autopsy on Smath. Devan considered Burge's cross-examination of the county coroner, Dr. Matus, to be "strident and active" but "d[id] not believe it was effective" in that Burge failed to demonstrate any alternative theory as to how Smath died.

{¶17} In terms of the use of an expert, Devan agreed that it was appropriate to consult with an OB/GYN in this case, but considered that simply a starting point, viewing that type of physician as more of a referral source who could have directed Burge to the appropriate type of expert to engage for Dovala's defense. Devan argued that Burge was "talking to the wrong people" and should have consulted a pathologist "at a minimum" as well as a neurologist.

{¶18} Devan opined that Burge needed to "analyze the case further" to adapt his defense to accommodate Dovala's statements to police by suggesting that Smath's injuries might have

occurred while he was temporarily out of her sight, attending to another child, or using the restroom. Because the time frame of the injury was critical to Dovala's defense, Devan believed that if an expert like Dr. Plioplys had been employed, Burge could have also argued that Smath's injuries occurred earlier in time when Smath was not under Dovala's care. Devan also criticized Burge's decision to pursue a defense theory that was not supported by science, as Burge admitted was the case here. Devan concluded that Burge's failure to pursue a professional, formal consultation with someone other than an OB/GYN fell below the standard of practice in this type of case. He further asserted that Burge's failure to interview either coroner before the trial constituted a breach of the duty he owed to Dovala and fell well beneath the reasonable standard for an attorney to prepare a defense for Dovala.

{¶19} Based on the foregoing observations, Devan concluded that Burge's performance fell below the reasonable standard of care and that Dovala was denied the effective assistance of counsel. He further stated that, had Burge engaged a competent expert to challenge how Smath's injuries occurred, a jury "would have acquitted her with that sort of evidence in this sort of case," and if not, that it was probable that she would have been convicted of a lesser offense. Devan concluded his testimony by stating that he "believe[s] that [Burge's] experience got the best of him" and that he "just didn't go far enough *** [or] ask the right questions."

{¶20} At his deposition, Burge stated that he was limited in his options for asserting a defense in light of Dovala's numerous statements to police that no other adults or children had been near Smath that day, nor had there been any accidents in the home. Burge reasoned that it would be inconsistent at trial to blame another person in the house that day for the injuries based on Dovala's statements. Additionally, Burge testified that the coroner's estimate that the injury had occurred between three to five hours before Smath's death, coupled with his own experience

in similar cases, precluded any attempt to suggest that another party, such as Smath's parents, had caused the injury. Burge explained that based on his experience in similar cases, his discussions with Dr. Bartek and Dr. Watson, and the statements Dovala made to police before retaining him as counsel, he felt the best strategy to pursue in Dovala's defense would be to rely on a vigorous cross-examination of Dr. Daniels and Dr. Matus. The record reflects Burge did so, offering several medical journals and studies challenging the conclusion of Dr. Matus, so much so that Dr. Matus agreed there was a possibility, though remote, that there were factors that could lead to increased intracranial pressure and result in a fracture similar to the one suffered by Smath.

{¶21} Consistent with the Supreme Court's directive, this Court has rejected the assertion that trial counsel is ineffective if he elects not to put forth an expert on defendant's behalf, and instead, relies on a rigorous cross-examination of the State's witnesses. See *State v. Parker* (Mar. 1, 2000), 9th Dist. No. 98CA007158, at *6, citing *Nicholas*, 66 Ohio St.3d at 436. Accord *State v. Fields* (Aug. 9, 2000), 9th Dist. No. 99CA0062, at *3. Here, the record reflects Burge's deliberate decision, based on a variety of considerations including discussions with medical professionals, not to seek an expert on Dovala's behalf, but to instead attack the credibility and findings of the State's experts. Giving due deference to counsel's decision, we cannot conclude that the failure to obtain an expert under these circumstances constitutes ineffective assistance of counsel. *Williams*, 74 Ohio App.3d at 695. Moreover, "[d]ecisions regarding the calling of witnesses are within the purview of defense counsel's trial tactics." *State v. Pordash*, 9th Dist. No. 05CA008673, 2005-Ohio-4252, at ¶21, quoting *State v. Ambrosio*, 9th Dist. No. 03CA008387, 2004-Ohio-5552, at ¶10. In that same regard, we agree with other courts that have held that a post-conviction relief petitioner cannot demonstrate ineffective assistance of

counsel by presenting "a new expert opinion that is different from the theory used at trial." *State v. Smith*, 4th Dist. No. 09CA3128, 2011-Ohio-664, at ¶29, quoting *State v. Cornwell*, 7th Dist. No. 00-CA-217, 2002-Ohio-5177, at ¶46. Accord *State v. Tenace*, 6th Dist. No. L-05-1041, 2006-Ohio-1226, at ¶26; *State v. White* (Aug. 7, 1998), 5th Dist. No. 97COA01229, at *9; and *State v. Combs* (1994), 100 Ohio App.3d 90, 103. "Ohio case law clearly shows that alternate or supplementary theories from expert witnesses, which are presented in post[-]conviction proceedings, are not sufficient to establish ineffective assistance of counsel[.]" *Smith* at ¶31. Despite Devan's claims that Burge's cross-examination was not effective, the record reveals that Dr. Matus agreed that it was possible that increased cranial pressure could have caused an existing fracture to expand in size, resulting in a fracture similar to the one that occurred here. Accord *In re J.B.*, 12th Dist. Nos. CA2005-06-176, CA2005-07-193, CA2005-08-377, 2006-Ohio-2715, at ¶34-35 (rejecting a claim of ineffective assistance in a petition for post-conviction relief where counsel was able to elicit testimony from the coroner on cross-examination admitting that it was "possible" that there was another cause of death, but counsel had not presented any corresponding expert on behalf of the defendant).

{¶22} To the extent Dovala takes issue with Burge's failure to properly investigate her claims, Burge testified that he sought the expertise of both an OB/GYN and a neurologist as well as conducting supplemental research on alternative causes of infant death in such circumstances. Further, Burge's initial and supplemental requests for discovery provide evidence that he pursued relevant information necessary to prepare a defense in this case. This Court will not employ "hindsight *** to distort the assessment of what was reasonable in light of counsel's perspective at the time[.]" *State v. Gapen*, 2d Dist. No. 20454, 2005-Ohio-441, at ¶30. Therefore, the trial court did not abuse its discretion in denying Dovala's petition for post-

conviction relief because there was no evidence that Burge was deficient in performing his duties as counsel. *Strickland*, 466 U.S. at 687. Having concluded that Burge was not deficient in acting as counsel, we need not address whether she suffered any prejudice. *Bradley*, 42 Ohio St.3d at 143; *Strickland*, 466 U.S. at 697. Consequently, Dovala's assignment of error is overruled.

III

**{¶23}** Dovala's sole assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

---

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETH WHITMORE
FOR THE COURT


MOORE, J.
CONCURS

DICKINSON, J.
CONCURS IN JUDGMENT ONLY


APPEARANCES:

BARRY W. WILFORD, Attorney at Law, for Appellant.

WILLIAM D. MASON, Cuyahoga County Prosecutor, T. ALLAN REGAS, and BRENT KIRVEL, Assistant Prosecuting Attorneys, for Appellee.