DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, R.T., Jr., appeals the decision of the Lorain County Court of Common Pleas, Juvenile Division, which adjudicated him a delinquent child by reason of one count of theft of a firearm with a gun specification and one count of violation of probation ungovernable. This Court affirms.
 I. {¶ 2} Warren Brunger and Nga Nguyen reside at 1720 W. 26th St., with Mr. Brunger's two daughters, Victoria and Lauren. On the night of November 29, 2004, Mr. Brunger and Ms. Nguyen were at work and Victoria and Lauren were home alone. Upon returning from work on the morning of November 30, 2004, Mr. Brunger and Ms. Nguyen discovered that several of their personal items had been stolen, including guns, ammunition, electronic equipment, and jewelry. Mr. Brunger notified the police, and the Lorain County Police Department conducted an investigation.
 {¶ 3} On December 2, 2004, a complaint was filed against appellant in the Lorain County Court of Common Pleas, Juvenile Division. Appellant was charged with being a delinquent child as defined in R.C. 2152.02, by reason of one count of theft of a firearm, a violation of R.C. 2913.02(A)(1), with a firearm specification pursuant to R.C. 2941.141, and one count of violation of probation, ungovernable, a violation of R.C.2152.02.
 {¶ 4} On March 2, 2005, the trial court issued a judgment entry and order of adjudication, ordering that appellant is adjudicated a delinquent child on the basis of one count of theft with a gun specification and one count of violation of probation ungovernable. Appellant filed objections to the magistrate's decision and the State responded. The trial court overruled appellant's objections on May 16, 2005. The trial court held a dispositional hearing on May 18, 2005. On May 19, 2005, the trial court issued a judgment entry and order of disposition, which ordered that appellant be committed to the custody of the Ohio Department of Youth Services.
 {¶ 5} Appellant timely appealed, setting forth three assignments of error for review.
 II. FIRST ASSIGNMENT OF ERROR
"THE EVIDENCE ADDUCED AT TRIAL WAS INSUFFICIENT TO SUSTAIN A CONVICTION AS A MATTER OF LAW, AND THEREFORE [APPELLANT'S] CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 6} In his first assignment of error, appellant asserts that the trial court's adjudication of him as a delinquent child was not supported by sufficient evidence and was against the manifest weight of the evidence. This Court disagrees.
 {¶ 7} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v.Gulley (Mar. 15, 2000), 9th Dist. No. 19600, citing State v.Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). Further,
"[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462.
 {¶ 8} Therefore, this Court will address appellant's claim that his adjudication as a delinquent child was against the manifest weight of the evidence first, as it is dispositive of his claim of insufficiency.
 {¶ 9} In determining whether a judgment of a juvenile court is against the manifest weight of the evidence, this Court applies the same standard of review as that in the criminal context. In re R.S., R.S., A.P., and A.G., 9th Dist. No. 21177, 2003-Ohio-1594, at ¶ 10. When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 10} In the present case, appellant was adjudicated a delinquent child by reason of one count of grand theft, a violation of R.C. 2913.02(A)(1), with a firearm specification pursuant to R.C. 2941.141, and one count of violation of probation, ungovernable, a violation of R.C. 2152.02. Appellant stipulated to the fact that he was on probation for purposes of the violation of probation, ungovernable charge. The statute regarding grand theft provides, in relevant part: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent[.]" R.C. 2913.02(A)(1).
 {¶ 11} At the adjudicatory hearing, Warren Brunger testified on behalf of the State. Mr. Brunger testified that he works the third shift at Nylonge Corporation, which is from 11:00 p.m. to 7:00 a.m. Mr. Brunger stated that when he left his home for work on November 29, 2004, his two daughters were the only ones in the house. He stated that before he left the house, he checked the front and back doors to make sure that they were locked. Mr. Brunger stated that he returned home from work at approximately 7:25 a.m. on November 30, 2004, to find that he had been robbed. Mr. Brunger testified that various items were missing from his home including guns, ammunition, jewelry, and electronic equipment. Mr. Brunger further testified that he did not give anyone permission to use the items that were missing.
 {¶ 12} Nga Nguyen, Mr. Brunger's live-in girlfriend, also testified on behalf of the State. Ms. Nguyen testified that she also works the third shift at Nylonge Corporation, and that she rode to work with Mr. Brunger on November 29, 2004. Ms. Nguyen stated that when she and Mr. Brunger left their home, Mr. Brunger's two daughters were the only people there. Ms. Nguyen testified that several of her personal belongings were missing when she returned home with Mr. Brunger on the morning of November 30, 2004, including a gun, ammunition for her gun, her wallet, and various pieces of jewelry. At the time of the adjudicatory hearing, Ms. Nguyen stated that the stolen items had been returned to her.
 {¶ 13} Harold Perkins, appellant's cousin, also testified at the adjudicatory hearing. Perkins testified that he and appellant went to Mr. Brunger's home around midnight on November 30, 2004. Perkins stated that the two went to the home to take Mr. Brunger's guns because Mr. Brunger's daughter Lauren had told him and appellant that Mr. Brunger had threatened to shoot them. Perkins stated that Mr. Brunger's other daughter, Victoria, let him and appellant in the back door. Perkins stated that the two sisters put their father's guns in a duffel bag while he and appellant waited on the patio. Perkins testified that while he and appellant were at Mr. Brunger's home, Nelson Marquez came over with Perkins' sister. According to Perkins' testimony, Marquez picked up the duffel bag, looked inside and told Perkins and appellant that he knew somewhere that they could take them. Perkins testified that he, appellant, and Marquez took the guns to Sarah Goodman's house and put them in her attic. Perkins then stated that appellant took one of the guns, a .9 millimeter, to his house and hid it in a heating vent. In addition, Perkins testified that the two sisters brought them a little bag that had some jewelry in it. Perkins stated that Marquez took the bag of jewelry to appellant's home.
 {¶ 14} Upon further examination, Perkins testified that he, appellant and Marquez went to Mr. Brunger's house a second time that night. Perkins stated that the second time, the sisters brought out some electronic equipment which the three young men took to Sarah Goodman's home.
 {¶ 15} During cross-examination, Perkins stated that he initially did not tell the police the truth regarding what happened on November 30, 2004, but that he later told the police the truth.
 {¶ 16} Lieutenant James Rohner of the Lorain Police Department also testified on behalf of the State. Lieutenant Rohner testified that one of the juveniles involved told the police where they could find the stolen items. Lieutenant Rohner stated that they recovered all of the stolen items except the .9 millimeter handgun from a residence where an individual named Sarah was living. Lieutenant Rohner testified that upon searching appellant's home twice, he found the .9 millimeter handgun owned by Ms. Nguyen wrapped in a t-shirt in a heating vent in appellant's bedroom. Lieutenant Rohner testified that he took pictures of the stolen items at the locations where they were found and again at the police station. Lieutenant Rohner further testified that after the police recovered the .9 millimeter gun that he re-interviewed Victoria Brunger, Marquez, and the appellant regarding the robbery. Lieutenant Rohner stated that the three were interviewed separately and that all three accounts matched each other and the evidence that was obtained through the investigation with the exception of who actually transported the .9 millimeter handgun to appellant's house. Lieutenant Rohner testified that all three accounts revealed that they were all involved in the initial theft as well as in transporting the stolen goods to various locations and that Marquez was the one who actually concealed the .9 millimeter gun in the floor.
 {¶ 17} The State also called Sarah Goodman as a witness. Ms. Goodman testified that on the morning of November 30, 2004, she came home from her aunt's house and found Marquez, Perkins, and appellant in her house. Ms. Goodman stated that the three had guns and that she told them to get the guns out of her house and she went back to her aunt's house across the street. Ms. Goodman testified that Marquez came over to her aunt's house about five minutes later and told her that they were leaving and taking the guns. Ms. Goodman stated that Marquez came back to her aunt's house about a half an hour later and that she accompanied Marquez, Perkins, and appellant to her house. Ms. Goodman testified that appellant had a blue bag containing some ladies' jewelry in it. Ms. Goodman then stated that appellant asked her if he could keep some stuff at her house because he had gotten into a fight with his mother and that she told him that he could. While on the stand, Ms. Goodman identified various pieces of electronic equipment that the police had introduced pictures of into evidence as being the items appellant asked if he could keep at her house. Ms. Goodman also identified the pictures of the jewelry that had been introduced into evidence as the jewelry that she saw in the blue bag that appellant had at her house. Ms. Goodman also identified one of the guns she saw in appellant's possession at her home as the same gun that was in a photo that was introduced into evidence as one of the guns stolen from Mr. Brunger's home.
 {¶ 18} The State also called Lauren Brunger to testify on behalf of the State. Lauren testified that she let appellant and Harold Perkins into her house on the night in question. Lauren stated that appellant went to her father's gun cabinet, opened it with a knife sharpener, and took the guns out of the cabinet. Lauren testified that the guns were put in her father's duffel bag. Lauren testified that she and her sister went to appellant's house about twenty minutes after he and Perkins left their house. Lauren stated that appellant had the .9 millimeter handgun that was taken from her house at his house. Lauren testified that appellant loaded the gun and took it outside and shot it. Lauren further testified that her sister Victoria went back to her house with appellant and Perkins at around three or four in the morning. Lauren stated that she and her sister Victoria went back to their house around 6:30 or 7:00 in the morning. Lauren testified that when she and her sister went back to their house some electronic equipment was missing. Upon further examination, Lauren admitted that she originally did not tell the police the truth about what took place on November 30, 2004, but she averred that her testimony at the hearing was the truth.
 {¶ 19} Appellant argues that the fact that some of the State's witnesses are co-defendants makes them less than credible. However, after reviewing the record, this Court cannot conclude that the trial court's adjudication of appellant as a delinquent child was against the manifest weight of the evidence. Having found that appellant's adjudication as a delinquent child was supported by the manifest weight of the evidence, this Court further necessarily finds that there was sufficient evidence to support appellant's adjudication. Accordingly, appellant's first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR
"THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING APPELLANT'S REQUEST FOR A CONTINUANCE BECAUSE THIS PROHIBITED APPELLANT FROM CALLING ANY WITNESSES AND ALSO PROHIBITED APPELLANT FROM CALLING REBUTTAL WITNESSES."
 {¶ 20} In his second assignment of error, appellant contends that the trial court abused its discretion when it denied his request for a continuance. This Court disagrees.
 {¶ 21} The decision whether to grant or deny a continuance is within the sound discretion of the trial court and should not be reversed on appeal absent an abuse of discretion. State v.Unger (1981), 67 Ohio St.2d 65, 67. An abuse of discretion connotes more than a mere error in judgment; it signifies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. State v. Myers,97 Ohio St.3d 335, 2002-Ohio-6658, at ¶ 75, citing State v. Adams (1980),62 Ohio St.2d 151, 157.
 {¶ 22} In determining whether the trial court abused its discretion by denying a motion for a continuance, this court must "apply a balancing test, weighing the trial court's interest in controlling its own docket, including facilitating the efficient dispensation of justice, versus the potential prejudice to the moving party." Burton v. Burton (1999), 132 Ohio App.3d 473,476, citing State v. Unger (1981), 67 Ohio St.2d 65, 67-68. The following factors should guide the trial court's decision whether or not to grant a continuance, and are considered by this Court in our review of such a decision:
"the length of the delay requested; whether other continuances have been requested and received; the inconvenience to the litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the [moving party] contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors[.]" State v.Unger (1981), 67 Ohio St.2d 65, 67-68.
 {¶ 23} In the present matter, appellant requested a continuance for an indefinite period of time so that trial counsel could determine if the names provided to him by appellant during the course of the trial were individuals who could be viable witnesses. Appellant requested the continuance during the second day of the hearing at the close of the State's case. Granting appellant's request for a continuance at such a late stage in the proceedings would have greatly inconvenienced everyone involved. The record shows that several pretrials were held, and that trial counsel had numerous opportunities to discuss the case with appellant. However, appellant did not inform his counsel of these alleged witnesses until the second day of the hearing. Furthermore, there is no evidence in the record as to the identity of the alleged witnesses that appellant would have called to testify or the content of their testimony. No mention thereof was proffered into the record. Without such evidence, this Court is unable to determine whether or to what extent appellant was prejudiced by the inability of the alleged witnesses to testify. State v. Simon (May 17, 1978), 9th Dist. No. 8727. "[Appellant's] right to process is not so absolute under these circumstances as to require the trial court to suspend proceedings to allow [appellant] time to find * * * additional witnesses." Id.
 {¶ 24} Therefore, this Court cannot conclude that the trial court abused its discretion in denying appellant's motion for a continuance. Appellant's second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR
"APPELLANT'S COUNSEL WAS INEFFECTIVE BECAUSE HE FAILED TO PROPERLY PRESENT WITNESSES ON APPELLANT'S BEHALF AND ADMITTED TO BEING UNPREPARED FOR TRIAL."
 {¶ 25} Appellant argues in his third assignment of error that his trial counsel was ineffective because he was unprepared for trial. This Court disagrees.
 {¶ 26} This Court employs a two-step process in determining whether a defendant's right to effective assistance of counsel has been violated. Strickland v. Washington (1984),466 U.S. 668, 687. First, this Court must determine whether there was a "substantial violation of any of defense counsel's essential duties to his client." (Citations omitted.) State v. Calhoun
(1999), 86 Ohio St.3d 279, 289. "This requires a showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." (Citations omitted.) Strickland, 466 U.S. at 687. Second, the appellant must show that the deficient performance of counsel prejudiced the defense. State v. Bradley (1989),42 Ohio St.3d 136, paragraph two of the syllabus. Prejudice exists where there is a reasonable probability that the outcome of the trial would have been different but for the alleged deficiencies of counsel. Id. at paragraph three of the syllabus. Appellant bears the burden of proof, and must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." State v. Colon, 9th Dist. No. 20949, 2002-Ohio-3985, at ¶ 48, quoting Strickland,466 U.S. at 687.
 {¶ 27} This Court may dispose of a claim of ineffective assistance of counsel by analyzing only the second prong of the test where defendant fails to show sufficient resulting prejudice. In re J.J., 9th Dist. No. 21386, 2004-Ohio-1429, at ¶ 16.
 {¶ 28} Defendant claims that his counsel was ineffective because his trial counsel was unprepared for trial. However, a review of the transcript indicates that trial counsel was clearly prepared for trial. Trial counsel's familiarity with the relevant facts, his investigation of the allegations and conversation with appellant and various witnesses is evident.
 {¶ 29} Appellant argues that his trial counsel was ineffective because he failed to call any witnesses on appellant's behalf. This Court has repeatedly held that "[d]ecisions regarding the calling of witnesses are within the purview of defense counsel's trial tactics." State v. Pordash,
9th Dist. No. 05CA008673, 2005-Ohio-4252, at ¶ 21, quoting Statev. Ambrosio, 9th Dist. No. 03CA008387, 2004-Ohio-5552, at ¶ 10. Further, tactical decisions by trial counsel cannot form the basis for a claim of ineffective assistance of counsel. See e.g.,State v. Bradford, 9th Dist. No. 22441, 2005-Ohio-5804, at ¶ 27; State v. Taylor, 9th Dist. No. 01CA007945, 2002-Ohio-6992, at ¶ 76. As discussed in appellant's previous assignment of error, trial counsel did request a continuance to investigate the possible existence of witnesses at the close of the State's case-in-chief. However, appellant only informed his trial counsel of these alleged witnesses on the second day of the trial. Trial counsel cannot be expected to subpoena witnesses that he does not know exist.
 {¶ 30} Appellant has failed to meet his burden under the first prong of the Strickland test. Consequently, appellant's third assignment of error is overruled.
 III. {¶ 31} Appellant's assignments of error are overruled. The decision of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
Moore, J. Boyle, J. concur.