[Cite as *In re T.M.*, 2017-Ohio-7233.]

STATE OF OHIO )  IN THE COURT OF APPEALS
 )ss: NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT )

IN RE: T.M.  C.A. No. 28491

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No. DL 15-03-0370

DECISION AND JOURNAL ENTRY

Dated: August 16, 2017

CARR, Judge.

{¶1}  Appellant T.M. appeals from the judgment of the Summit County Court of Common Pleas, Juvenile Division, adjudicating him delinquent and entering a disposition. This Court affirms.

I.

{¶2}  On February 14, 2015, A.E., then 18 years old, was living at her grandmother's apartment. A.E.'s cousin had died shortly before the events at issue and a friend of A.E.'s was staying with A.E. at the apartment to offer support and to help keep A.E. sober, as A.E. was a heroin addict.

{¶3}  A.E., who was anxious to use drugs again, got into an argument with the friend who was staying with her so that the friend would leave; after which, the friend did leave. At the time, A.E. also was communicating with T.M., who was then 16 years old, over Facebook. A.E. had not met T.M. before but they had a lot of mutual friends. T.M. mentioned that he had "some

Xanax and a bottle and wanted to come over[.]" T.M. also alluded to wanting to engage in sex with A.E., but she told him that she was not interested and that she was a lesbian. Nonetheless, T.M. inferred from the conversation that A.E. was willing to have sex with him.

{¶4} T.M. came to the apartment sometime late in the evening or early the next day. The two "did a couple Xanax and [] took a couple shots." After A.E. had made something for T.M. to eat, a friend of T.M.'s, known as "Tom-Tom," got in contact with T.M. and T.M. asked if Tom-Tom could come over. Because A.E. had known Tom-Tom for a while, she felt comfortable having him come over. When he arrived, another man was with him, who was very drunk. The other man was so intoxicated that he went right to the bathroom, vomited, passed out, and remained there for much of the night.

{¶5} After a while, A.E. became very tired from the Xanax and alcohol and so she went into the bedroom and said she was going to sleep. T.M. followed her into the bedroom and started "rubbing on [her] and touching [her] and trying to get [her] to do things[.]" But she "kept saying no and kind of push[ed] him away[.]" T.M. then penetrated her vaginally. While T.M. was still assaulting her, Tom-Tom came in the room and wanted to "get in on [it]." T.M. got Tom-Tom out of the room, but shortly thereafter, he returned. Tom-Tom engaged in vaginal intercourse with A.E. while T.M. forced her to perform fellatio on him. Tom-Tom was holding her hair and T.M. was pushing her head down. A.E. asserted that it felt like her "body was shutting down" and she "didn't have any control over anything."

{¶6} After T.M. and Tom-Tom left the room, A.E. sent her friend a message on her phone stating that she needed her friend. A.E. was "just scared" and "didn't know what to do." Then, Tom-Tom came in and asked to use her phone. The next thing A.E. remembered was waking up with the man she didn't know in bed next to her. Her phone and laptop were gone, as

were T.M. and Tom-Tom. A.E. went to the nearby diner and asked to use a customer's phone. A.E. contacted her cousin, who contacted her mother. An employee of the diner overheard A.E. crying and talking about being assaulted and so the employee called 911. Officers came to the diner and A.E. was subsequently examined and a rape kit was collected. The DNA found in the samples from the vaginal swabs and external genital swabs included profiles consistent with both T.M.'s and Tom-Tom's DNA profiles.

{¶7} While T.M. admitted that he took A.E.'s laptop and that Tom-Tom took her phone, T.M. denied raping A.E. His version of events differed significantly from A.E.'s. T.M. maintained that all of the sexual conduct was consensual.

{¶8} A police officer filed three complaints against T.M., alleging that he was a delinquent child by reason of committing acts that were sufficient to establish the elements of two counts of rape and one count of theft. Subsequently, four additional complaints were filed which alleged T.M. was delinquent for committing acts that amounted to three counts of rape (one alleging vaginal intercourse, one alleging anal intercourse, and one alleging oral sex) and one count of theft. The original three counts were dismissed.

{¶9} The matter proceeded to a hearing before a magistrate, following which the magistrate adjudicated T.M. delinquent of two counts of rape and one count of theft. The remaining count of rape (concerning anal intercourse) was dismissed with prejudice. The trial court entered judgment the same day. T.M. filed objections and supplemental objections to the magistrate's decision, along with the transcript of the hearing. The trial court overruled the objections. Prior to disposition, T.M. filed a motion for a new trial based upon newly discovered evidence. In that motion, T.M. alleged that Tom-Tom had been acquitted and that, because at the time of T.M.'s trial, Tom-Tom was being charged in relation to the events of February 15,

2015, Tom-Tom could not be called to testify at T.M.'s trial. Now, however, Tom-Tom would be available to provide testimony. The trial court denied the motion for new trial and set the matter for disposition.

{¶10} Following disposition, T.M. appealed; however, the appeal was dismissed for lack of a final appealable order. Upon remand, the trial court again entered a disposition and T.M. appealed from that entry, raising three assignments of error for our review, which will be addressed out of sequence to facilitate our analysis.

II.

**ASSIGNMENT OF ERROR III**

THE TRIAL COURT ERRED IN ADJUDICATING THE JUVENILE DELINQUENT OF TWO COUNTS OF RAPE.

{¶11} T.M. argues in his third assignment of error that the trial court erred in adjudicating him delinquent of two counts of rape. Specifically, he asserts that there was insufficient evidence of force.

{¶12} "When considering this issue, this Court applies the same standard of review as that applied in an adult criminal context." *In re L.M.,* 9th Dist. Summit No. 25693, 2012-Ohio-1025, ¶ 7.

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶13} T.M. challenges the trial court's findings of delinquency based upon acts that would constitute the crime of rape if committed by an adult. R.C. 2907.02(A)(2) provides that

"[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Sexual conduct "means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A). Force "means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1).

{¶14} "A defendant purposely compels his victim to submit by force or threat of force when he 'uses physical force against the victim, or creates the belief that physical force will be used if the victim does not submit.'" *State v. Gary*, 9th Dist. Wayne No. 12CA0014, 2012-Ohio-5813, ¶ 5, quoting *State v. Schaim*, 65 Ohio St.3d 51 (1992), paragraph one of the syllabus. "Force or the threat of force 'can be inferred from the circumstances surrounding the sexual conduct.'" *Gary* at ¶ 5, quoting *Schaim* at 55.

{¶15} At trial, A.E. testified that, after she went into the bedroom and was lying down, T.M. came in and began touching and rubbing her and "trying to get [her] to do things with him[.]" She "kept saying no and kind of pushing him away[.]" She just "kept telling him, 'No, I'm not doing it. I'm going to sleep, no.'" She testified that she did not know what to do, "felt like [she] had no control over anything." Nonetheless, T.M. proceeded to engage in vaginal intercourse with her.

{¶16} Later, when Tom-Tom came in, Tom-Tom held A.E.'s hair and T.M. told her to "suck [his] dick." A.E. averred that "they were kind of like pushing [her] and pushing [her] head down and stuff because [she wouldn't] do it." A.E. indicated that they told her to get on her

knees. A.E. testified that she "had no idea what to even do" as she "never really had sex with a guy[.]" T.M. told her that that was okay, he would teach her. Thereafter, A.E. performed fellatio on T.M. while Tom-Tom was having vaginal intercourse with her. A.E. indicated that they also attempted to penetrate her anally. A.E. testified that she did not want to engage in any sexual conduct with T.M. or Tom-Tom that night.

{¶17} After T.M. and Tom-Tom left the room, A.E. sent her friend a message on her phone stating that she needed her friend. A.E. was "just scared" and "didn't know what to do[]" because she "was in a house full of three guys the only girl." A.E. believed that T.M. or Tom-Tom deleted the message to her friend after they took her phone as that message was deleted and several nude photos were sent out to people from her phone.

{¶18} Additional information was contained in A.E.'s medical records, which were admitted into evidence, and included the narrative statement that A.E. provided to the nurse that examined her. In that statement, A.E. relayed that after she told T.M., "no," he pulled her hair, removed her pajama pants and underwear, and pulled her on top of him. A.E. told the nurse that Tom-Tom walked in and that A.E. was afraid of them. A.E. stated that T.M. told her that "she would let them both []get their nut off before she was done." According to the narrative, "they both came at her at the same time, [T.M.] penetrated her vagina [with] his penis * * * and Tom[-]Tom forced her to 'suck his dick' and then they switched spots." A.E. "'freaked out' when they tried to penetrate her anus so they did not but held her down with their bodies until they were both done."

{¶19} While the details of the narrative do not precisely match the details of A.E.'s testimony, such a discrepancy would go to issues of weight and credibility and not sufficiency.

{¶20} Given the totality of the evidence admitted, and viewing it in a light most favorable to the State, we conclude that sufficient evidence was presented whereby a trier of fact could find beyond a reasonable doubt that T.M. compelled A.E. to submit to sexual conduct, including vaginal intercourse and fellatio, via force or threat of force. A.E. discussed being afraid and being outnumbered. A.E. detailed that she told T.M. "no" on multiple occasions and described pushing him away prior to T.M. engaging in vaginal intercourse with her. Further, A.E. testified that T.M. and Tom-Tom pushed her head towards T.M.'s genitals so that she would perform fellatio on him and that they did so because she would not do it. The narrative contained in the medical records provides additional evidence of force and threat of force, which included a statement by T.M. that A.E. "would let them both []get their nut off before she was done[]" and evidence that T.M. and Tom-Tom used their body weight in order to get A.E. to comply. Accordingly, T.M.'s adjudication of delinquency based upon two counts of rape was based upon sufficient evidence. *See State v. Miller*, 9th Dist. Summit No. 27048, 2015-Ohio-279, ¶ 39 (concluding there was sufficient evidence of force or threat of force when offender threatened to punch victim, climbed on top of victim and engaged in vaginal intercourse while she tried to resist him and told him to stop); *State v. Ralston*, 9th Dist. Lorain No. 08CA009384, 2008-Ohio-6347, ¶ 3, 9 (determining there was sufficient evidence of forcible rape when defendant grabbed victim's arms, told her to lie down, and then vaginally raped her despite the victim telling him to stop and that he was hurting her).

{¶21} T.M.'s third assignment of error is overruled.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN DENYING THE JUVENILE'S MOTION FOR
NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE.

{¶22} T.M. argues in his first assignment of error that the trial court erred in denying his motion for a new trial. Specifically, T.M. maintains that he was entitled to a new trial based upon the fact that Tom-Tom was acquitted and could now testify in T.M.'s trial. Thus, T.M. argues that Tom-Tom's testimony "would have tipped the weight of the evidence in the defense's favor[.]"

{¶23} A trial court's decision ruling on a motion for new trial based upon newly discovered evidence is reviewed for an abuse of discretion. *See State v. Tolliver*, 9th Dist. Lorain No. 16CA010986, 2017-Ohio-4214, ¶ 18 (addressing a ruling made under Crim.R. 33); *In re S.S.*, 9th Dist. Wayne No. 04CA0032, 2004-Ohio-5371, ¶ 11-12 (addressing a ruling in a permanent custody case made under Civ.R. 59); *In re Shad*, 1st Dist. Hamilton Nos. C-080965, C-081174, 2009-Ohio-3611, ¶ 9 (applying an abuse of discretion standard to an appeal involving a denial of a motion for new trial in a juvenile delinquency case). To warrant the granting of a motion for a new trial based upon newly discovered evidence, the movant must show that the evidence:

> (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.

*State v. Petro*, 148 Ohio St. 505 (1947), syllabus; *see also Tolliver* at ¶ 18; *In re S.S.* at ¶ 11 (applying a nearly identical standard in a permanent custody case based upon a motion for new trial filed pursuant to Civ.R. 59); *In re Shad* at ¶ 10 (applying the standard from *Petro* in an appeal of the denial of a motion for new trial in a juvenile delinquency case).

{¶24} Here, we cannot conclude the trial court abused its discretion in denying the motion.[1] First, there was no evidence in the record, aside from T.M.'s counsel's assertion, that Tom-Tom was in fact acquitted. Moreover, there was no evidence in the record addressing what precisely Tom-Tom's testimony would be. Further, T.M.'s counsel did not explain how this evidence would meet the standard set forth above. There was no discussion demonstrating that the evidence would not "merely impeach or contradict the former evidence." *See Petro* at syllabus. Further, absent knowing the content of Tom-Tom's testimony, we fail to see how T.M. could demonstrate that the evidence "discloses a strong probability that it [would] change the result if a new trial [was] granted[.]" *Id.*

{¶25} In light of the foregoing, T.M.'s first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

POST-TRIAL COUNSEL WAS INEFFECTIVE BECAUSE SHE FAILED TO INVESTIGATE AND SECURE AN AFFIDAVIT FROM [TOM-TOM] IN SUPPORT OF THE MOTION FOR NEW TRIAL.

{¶26} T.M. argues in his second assignment of error that his post-trial counsel was ineffective for failing to secure an affidavit from Tom-Tom in support of the motion for new trial.

{¶27} "This Court applies the same analysis to claims of ineffective assistance of counsel for juveniles and adults: whether there was deficiency in the performance of counsel and that, but for counsel's errors, there is a reasonable possibility that the outcome of the proceeding

---

[1] The record reflects that a hearing was scheduled on the motion for new trial. It is unclear from the record whether a hearing took place as the hearing is not referenced in the entry ruling on the motion. No transcript of the hearing appears in the record. *See State v. Ricks*, 9th Dist. Medina No. 09CA0094-M, 2010-Ohio-4659, ¶ 16.

would have been different." *In re D.R.*, 9th Dist. Lorain No. 11CA009970, 2011-Ohio-4462, ¶ 4; *see also In re R.T.,* 9th Dist. Lorain Nos. 05CA008728, 05CA08742, 2006-Ohio-1311, ¶ 26 (applying *Strickland v. Washington*, 466 U.S. 668 (1984), in the context of a juvenile delinquency proceeding).

{¶28} The record in the instant matter does not disclose what testimony Tom-Tom would have provided had counsel obtained an affidavit. Accordingly, we cannot discern whether the failure of T.M.'s counsel to secure an affidavit to support the motion for a new trial prejudiced T.M. as we cannot determine whether Tom-Tom's testimony would have altered the outcome of the trial. Instead, T.M.'s assertion on appeal is speculative. This Court has previously concluded that "'[s]peculation regarding the prejudicial effects of counsel's performance will not establish ineffective assistance of counsel.'" *State v. Buzek*, 9th Dist. Medina No. 14CA0011-M, 2015-Ohio-4416, ¶ 7, quoting *State v. Zupancic*, 9th Dist. Wayne No. 12CA0065, 2013-Ohio-3072, ¶ 4.

{¶29} T.M.'s second assignment of error is overruled.

III.

{¶30} T.M.'s assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

CEDRIC B. COLVIN, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.